IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

TRAVELERS PROPERTY CASUALTY          )
COMPANY OF AMERICA,                  )
                                     )
              Plaintiff,             )
                                     )
       v.                            )   Case No. 06-0946-CV-W-REL
                                     )
NATIONAL UNION INSURANCE CO.         )
OF PITTSBURGH, PENNSYLVANIA,         )
                                     )
              Defendant.             )

**ORDER GRANTING**
**NATIONAL UNION'S MOTION FOR SUMMARY JUDGMENT**

Before the court is defendant National Unions' motion for
summary judgment.  I find that there is no genuine issue as to
any material fact and that National Union is entitled to judgment
as a matter of law on all counts.

## I. BACKGROUND

On February 17, 1999, an explosion occurred at KCP&L's
Hawthorn Generating Station.  On April 3, 2001, KCP&L filed a
lawsuit in state court (01cv207987).  Prior to trial, KCP&L and
National Union settled with various third parties for a total of
$126,592,696.12.  On March 4, 2004, a jury awarded KCP&L and
National Union $97,622,191.16[1].

_____

[1]On March 4, 2004, the jury found damages in the amount of
$452,000,000.  They assessed KCP&L 70% liable and Rockwell
Automation, the only defendant left who had not settled, 30%
liable.  On May 26, 2004, the trial judge determined that a
contractual limitation applied and reduced the verdict to
$190,867.00.  The court of appeals reinstated the jury verdict on
May 9, 2006; and, after apportioning the percentage of liability
and giving credit for settlements, KCP&L's final judgment was

Meanwhile, on June 14, 2002, KCP&L filed suit against National Union and Travelers in Jackson County Circuit Court alleging that National Union had not paid all that it was obligated to pay under the primary insurance contract and that Travelers had paid nothing pursuant to the secondary insurance contract that was in effect at the time of the explosion. National Union had provided $200 million[2] in primary insurance coverage and Travelers had provided $100 million in excess coverage.

On July 19, 2002, the defendants removed that case to federal district court and the case was assigned to District Judge Dean Whipple (case number 02-0680-CV-W-DW). On July 1, 2004, National Union was dismissed from that lawsuit pursuant to a settlement agreement with KCP&L. On September 10, 2004, Judge Whipple entered an order finding that $56 million[3] recovered by KCP&L from third parties represented "uninsured loss" and therefore could not be used to calculate "ultimate net loss". Under the excess policy, Travelers's $100 million liability did

_____

$97,622,191.16. KCP&L v. Bibb, 197 S.W.3d 147 (Mo. Ct. App. 2006).

[2]Reliance National Insurance Company, not a party to this suit, actually insured $25 million of the first $100 million of this coverage.

[3]This refers to KCP&L's portion of the settlements in the amount of $126,592,696.12 received in the state court action by both KCP&L and National Union.

not kick in until KCP&L had suffered greater than $200 million in "ultimate net loss." On February 1, 2005, Travelers and KCP&L filed a stipulation of dismissal with prejudice in accordance with a settlement agreement under which Travelers paid KCP&L $10 million. On February 8, 2005, Judge Whipple dismissed that case.

On November 18, 2005, Travelers filed the instant action in federal court in the Eastern District of Missouri seeking a return of $10 million of National Union's portion of the $97,622,191.16 awarded by a jury against Rockwell Automation in state court in 2004. The case was transferred to the Western District of Missouri on November 17, 2006, and assigned to me. In its amended complaint, Travelers seeks a declaratory judgment against National Union declaring that Travelers has a superior interest in any monies recovered through subrogation, and no party is entitled to reimbursement of subrogation monies prior to Travelers; and Travelers is entitled to reimbursement of the $10 million it paid to KCP&L for the loss from National Union and Reliance out of the money recovered by National Union and Reliance through subrogation. Travelers also has a claim for breach of the duty of good faith and fair dealing against National Union seeking $10 million in damages, and a claim for the $10 million through a third-party beneficiary theory. This motion for summary judgment was filed on March 3, 2008 (document number 143).

3

On April 2, 2008, Travelers filed its response in opposition to National Union's motion for summary judgment (document number 166). On April 17, 2008, National Union filed a reply (document number 178).

## II. STANDARD FOR SUMMARY JUDGMENT

Rule 56(c), Federal Rules of Civil Procedure, permits summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

The key to determining whether summary judgment is proper is ascertaining whether there exists a genuine issue of material fact. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A genuine issue of material fact exists if: (1) there is a dispute of fact; (2) the disputed fact is material to the outcome of the case; and (3) the dispute is genuine, that is, a reasonable jury could return a verdict for either party. American Academy of Family Physicians v. United States, 75 A.F.T.R.2d 95-1709 (W.D. Mo. 1995), aff'd 91 F.3d 1155 (8th Cir. 1996). The party moving for summary judgment has the burden of proving that these requirements for summary judgment have been met. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970).

In a summary judgment analysis, a court must first consider whether there are any issues of fact. If the only issues are issues of law, then summary judgment is appropriate. <u>Disesa v. St. Louis Community College</u>, 79 F.3d 92, 94 (8th Cir. 1996). If issues of fact are raised, a court must consider whether these issues are material to the outcome of the case. Materiality is identified by the substantive law that is to be applied. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. at 248. Factual disputes that are collateral to the substantive law will not preclude summary judgment. <u>Id</u>.

In addition to the requirement that a dispute of fact be material, the dispute must also be genuine. A dispute of fact is considered genuine if the non-moving party has produced sufficient evidence such that a reasonable jury could return a verdict for that party. <u>Id</u>. at 249. When considering a motion for summary judgment, the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in its favor. <u>Id</u>. at 255. If the evidence submitted by the non-moving party is merely colorable or is not significantly probative, then summary judgment may be granted. <u>Id</u>. at 249-250.

Where the party moving for summary judgment does not bear the burden of proof at trial, that party must show "that there is an absence of evidence to support the non-moving party's case." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 325 (1986). This burden

is met when the moving party identifies portions of the record demonstrating an absence of a genuine issue of material fact. Id. at 323. If the moving party meets the requirement, the burden shifts to the non-moving party who must set forth specific facts showing that there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 474 U.S. at 248. The trial judge then determines whether a trial is needed -- "whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Id. at 250.

## III. PROPOSED UNCONTROVERTED FACTS

### A. UNCONTROVERTED FACTS OFFERED BY DEFENDANT

Below, typed in bold, are the facts offered by defendant which I find to be uncontroverted by the record before me. Any uncontroverted facts without citations to the record are not controverted by the plaintiff in its response. Any proposed facts not in bold remain controverted.

**1. Defendant Kansas City Power and Light ("KCP&L") is a public utility company with its principal offices in Kansas City, Missouri.**

**2. Defendant National Union Insurance Company of Pittsburgh, Pennsylvania ("National Union") issued an all-risks primary policy to KCP&L, policy number ST 260 44 57, in effect from March 31, 1997, to March 31, 2000, with limits of $200**

6

million (the "primary policy").  Reliance National Insurance Company ("Reliance") also participated in the Primary layer of insurance, insuring $25 million of the first $100 million. National Union insured $75 million of the first $100 million and all of the second $100 million.

3.    The named parties to the primary policy are National Union and KCP&L.  National Union and KCP&L are the only parties to the primary policy. Travelers Indemnity Company of Illinois ("Travelers") is not a party to the primary policy.

Travelers objected to all but the first sentence; however, Travelers did not cite to anything in the record supporting its objection.

4.    Travelers issued an excess insurance policy to KCP&L, policy number KTXJ-CMB201T279-9-98, in effect from March 31, 1998, to March 31, 1999, with limits of $100 million in excess of the $200 million insured by the primary policy (the "excess policy").

5.    The only parties to the excess policy are Travelers and KCP&L.  National Union is not a named party to the excess policy.

6.    During the process of underwriting the excess policy, there were no negotiations, and indeed, no communication at all, between National Union and Travelers regarding the terms of either the Excess or primary policy.

7

7.   National Union never agreed to be bound by the terms and conditions of the excess policy.

8.   On February 17, 1999, there was an explosion at KCP&L's Hawthorn Generating Station.

9.   National Union, Reliance, and KCP&L executed an agreement (the "allocation agreement") in June 2000, apportioning any subrogation proceeds recovered in relation to the February 17, 1999, explosion as follows:  55% to National Union and Reliance and 45% to KCP&L.

> Travelers objected to this proposed fact because originally it stated that the agreement was entered into in August 2000.  Because defendant cites to the agreement which is dated June 29, 2000, "June" has been substituted in place of "August."

10.  Travelers had the opportunity to join KCP&L and National Union in pursuing the subrogation litigation in the year 2000. At that time, Travelers affirmatively declined to do so.

11.  In April 2001, pursuant to the allocation agreement, National Union, Reliance, and KCP&L filed a subrogation action (the "subrogation litigation") in Missouri state court against the various third parties responsible for the explosion.

12.  In the spring of 2002, Travelers had another opportunity to join the subrogation litigation after the

8

Complaint had been filed.  Travelers again declined to do so.

13.  On June 12, 2002, KCP&L made claims under both the Primary and Excess Policies for a total of $285,870,731.00 in damages.

14.  Also in June 2002, KCP&L filed a lawsuit against National Union, Reliance, and Travelers for coverage under the Primary and Excess Policies (the "coverage litigation").  The case was removed to the Western District of Missouri in July 2002 (case number 02-0680-CV-W-DW).

15.  By February 2004, KCP&L reached a settlement for the sum of $126,592,696.12 with all but one of the defendants in the subrogation litigation.

16.  In May 2004, while the coverage litigation was pending, National Union, Reliance, and KCP&L agreed that the primary policy limits were exhausted and payment was made to KCP&L in full settlement of the primary policy.

17.  Also in May 2004, KCP&L obtained a jury verdict and judgment for $97,622,191.16 against the last remaining defendant in the subrogation litigation.

18.  On May 26, 2004, the judge in the subrogation litigation reduced the jury judgment of $97,622,191.16 to $190,000.00.

19.  In January 2005, Travelers and KCP&L entered into a settlement agreement that resolved KCP&L's insurance coverage claim under the excess policy, an issue in the coverage litigation, for $10 million.

20.  On November 18, 2005, Travelers filed the lawsuit that is the subject of this summary judgment motion (the "Travelers Lawsuit") in the Eastern District of Missouri, seeking $10 million in subrogation proceeds from National Union.

21.  On May 9, 2006, the Missouri Court of Appeals reinstated the original jury judgment of $97,622,191.16 against the last remaining defendant in the subrogation litigation.

22.  On June 16, 2006, Travelers amended its complaint to name KCP&L as an additional defendant.

23.  On November 16, 2006, the Eastern District of Missouri ordered the Travelers Lawsuit transferred to the Western District of Missouri.

**B.**  *UNCONTROVERTED FACTS OFFERED BY PLAINTIFF*

Below, typed in bold, are the facts offered by Travelers in its response which I find to be uncontroverted by the record before me.  Any uncontroverted facts without citations to the record are not controverted by National Union in its reply.  Any proposed facts not in bold remain controverted.

1.     This is a duplicate of National Union's fact number 2 above.

2.     **The National Union policy states in relevant part:**

**23.  <u>SUBROGATION</u>**
**If the Company pays a claim under this policy, it will be subrogated to the extent of such payment, to all the Insured's rights of recovery from other persons, organizations and entities.**
                    **\* \* \* \* \***
**The Insured will act in concert with the Company and all other interests concerned, in the exercise of such rights of recovery.**

**If any amount is recovered as a result of such proceedings, the net amount recovered after deducting the cost of recovery will accrue first to the Company(ies) involved in proportion to their respective interests.  If there is no recovery, the interests instituting the proceedings will bear the expense of the proceedings proportionately.**

**The Insured will do nothing after the loss to prejudice such rights of subrogation.**

National Union objects to this proposed fact only because it is a partial citation of the subrogation clause. The entire Subrogation Provision is included in the exhibits provided by National Union.

3.     This is a duplicate of National Union's fact number 2 above.

4.     This is a duplicate of National Union's fact number 2 above.

5.     This is a duplicate of National Union's fact number 2 above.

11

6.   This is a duplicate of National Union's fact number 4 above.

7.   This is a duplicate of National Union's fact number 4 above.

**8.   The excess policy insured against direct loss or damage and actual loss, as per the coverage terms of the primary policy.**

**9.   The excess policy also contained a subrogation provision under section 11.A. ("subrogation provision") describing KCP&L's duties to Travelers, which provides in pertinent part:**

> **11.   GENERAL CONDITIONS**
>
> **A.   SUBROGATION - This insurance shall not be invalidated should the Insured waive by specific written agreement prior to a loss any or all right of recovery against any party for loss insured against by the policy.  Each Insured agrees to assist and cooperate with The Travelers in any subrogation proceedings which it initiates and to do nothing after a loss to prejudice The Travelers subrogation rights.  The Travelers may require from the Insured an assignment of all right of recovery against any party for loss to the extent that payment therefore is made by Travelers.  The Travelers shall be entitled to priority of recovery against any such third party (including interest) to the extent payment has been made to the Insured, plus attorney's fees, expenses for costs incurred by the Travelers.**

National Union objects to this proposed fact because (1) it is a partial citation of the subrogation provision, (2) Travelers emphasized the last sentence of the above

12

quotation, and (3) it is inapplicable.  These objections do not call into doubt the fact that the excess policy contains this paragraph.

10.  As contracted between Travelers and KCP&L, Travelers receives priority of recovery of any subrogation recovery by KCP&L to the extent Travelers has made payment to KCP&L under the excess policy.

In support of this proposed fact, Travelers cites to the paragraph quoted in fact number 9 above which is found in the insurance contract.  This proposed fact is merely Travelers's interpretation of the legal effect of paragraph 11.A. of the contract.  This is not a fact, it is a legal conclusion.

11.  This is a duplicate of National Union's fact number 8 above.

**12.  KCP&L made a claim under the primary layer of insurance for $200 million and a claim under the Travelers excess policy for $85,870,731.**

**13.  By January 2000, National Union and KCP&L began preparing an allocation agreement, without including Travelers, and specifically omitted Travelers from the final form of the allocation agreement.**

National Union objects to this proposed fact only because it "mischaracterizes the preparation and execution

13

of the allocation agreement" because Travelers was invited to participate but specifically declined.  Because that is already listed as an undisputed fact in National Union's undisputed facts, the misleading nature of this proposed fact is not relevant.

**14.  In June 2000, after National Union had made significant payments to KCP&L, the primary insurers and KCP&L entered into an allocation agreement whereby they agreed to jointly prosecute subrogation claims against third parties responsible for the explosion and to apportion any recovery proceeds on a 55% primary insurers/45% KCP&L basis.**

15.  Under the allocation agreement, the prosecution of the subrogation claims was managed by the primary insurers.

National Union objects to this proposed fact as a "narrow characterization" of the parties' relationship relative to the allocation agreement.  The agreement, cited to by Travelers, states that the "Recovery Action shall be managed by the Insurers through its [sic] legal counsel", subject to two entire pages of rights and conditions of the parties.  This proposed fact is not established based on the citation by Travelers.  In any event, this proposed fact is not material.

**16.  At the time the allocation agreement was executed by the primary insurers and KCP&L in June 2000, the primary layer of**

14

**insurance had not been exhausted, and Travelers had not made any payments under the Travelers excess policy to KCP&L.**

17.   Based on information provided to them from their adjuster and otherwise, the primary insurers and Travelers believed that the total amount of insured damages would not exceed $200 million.

> National Union objects to this proposed fact on the grounds that (1) the statement is not limited in time and therefore inaccurate, and (2) Travelers improperly relies on the testimony of KCP&L's risk adjuster Gary Morrow and a letter from Travelers's adjuster Bill Schoenborn to establish what the primary insurers, including National Union, "believed".   This proposed fact is not undisputed.

**18.   On September 19, 2000, Gary Morrow, on behalf of KCP&L, invited Travelers to participate in the allocation agreement, which had already been negotiated and executed by the primary insurers and KCP&L.**

> National Union objects to this proposed fact on the ground that it implies Travelers was invited to joint the subrogation litigation only after the allocation agreement was executed.   National Union has included a proposed fact indicating that Travelers had the opportunity to join the allocation agreement prior to its execution in June 2000;

therefore, the possible mischaracterization of this proposed fact is not relevant.

**19.  On October 13, 2000, Travelers declined to participate in the allocation agreement.**

National Union objects to the remainder of this proposed fact, which I have deleted, and which states as follows:  "because the loss was not likely to exceed $200 million, and Travelers did not anticipate making payments, which would give rise to any subrogation right."  National Union points out that Travelers's motivation is not an undisputed fact, and cites to the record suggesting that the reason Travelers did not participate in the allocation agreement was to protect its coverage position.

**20.  Travelers reserved its rights to participate in the allocation agreement in the event Travelers made payment under its excess policy.**

National Union objects to this proposed fact on the ground that Travelers never notified National Union of its reservation of rights.  That objection goes to the appropriate use of this fact, not whether it is true.  This fact does not establish that Travelers actually has any rights to participate in the agreement, it merely states that Travelers reserves any rights that may exist.

21.  Roe Vaughn had been retained as an independent adjuster on behalf of the insurers and issued reports from February 22, 1999, through August 13, 2003, that estimated that the net claim would not exceed $200 million.

22.  On April 3, 2001, KCP&L sued various tortfeasors, including Rockwell Automation, Inc. ("Rockwell") pursuant to the allocation agreement.

23.  Prior to trial against Rockwell in the underlying state court subrogation case styled Kansas City Power & Light Company v. Bibb & Associates, Inc., et al., cause no. 01cv207987, the primary insurers and KCP&L settled with various third parties for the sum of $126,592,696.12.  When the case against Rockwell finally went to trial, the jury determined that KCP&L was 70% at fault for the damages arising out of the explosion [as compared to Rockwell].

24.  Pursuant to the allocation agreement, KCP&L and the primary insurers split the subrogation settlement proceeds on a 55% primary insurers/45% KCP&L basis, such that the primary insurers recovered approximately $70 million and KCP&L recovered approximately $56 million.

25.  On June 14, 2002, KCP&L sued the primary insurers and Travelers because of a coverage dispute between KCP&L and its insurers.

17

National Union objects to this proposed fact because KCP&L did not sue Reliance, who was a primary insurer. The document cited by Travelers indeed lists only one primary insurer, National Union.

**26. On August 6, 2002, Chad Neuens, on behalf of Travelers, asserted Travelers's right to priority of recovery of any monies obtained through subrogation, in the event that Travelers made payment to KCP&L under the Travelers excess policy.**

National Union objects to this proposed fact on the ground that Mr. Neuens never asserted Travelers's right to priority of recovery of any monies obtained through subrogation by National Union. The letter cited by Travelers states that "[I]n the event that Travelers does make any payments on this claim to KCP&L, we will take the position that Travelers is entitled to first _dollar right of recovery on any money recovered_ from the defendants in the captioned action" (emphasis added). The letter does not specifically identify money received by KCP&L.

**27. After KCP&L began recovering money from various tortfeasors through subrogation, National Union and KCP&L entered into a settlement agreement on May 28, 2004, in which National Union agreed to make a final payment under its policy to KCP&L in**

the amount of $30,809,967.00[4].

28.  On June 15, 2004, after Travelers and KCP&L had briefed whether KCP&L was entitled to allocate subrogation recoveries as insured or uninsured losses with regard to reduction of KCP&L's ultimate net loss, the court in the coverage litigation declined to address any issue pertaining to subrogation as "[a]rguments applying the principles of subrogation have no place in the interpretation of the excess policy's 'ultimate net loss' clause." The court's September 10, 2004, order did not address any issues pertaining to subrogation or reimbursement as that issue was not before the court.

> National Union objects to this proposed fact but does not cite to anything in the record or indicate what is inaccurate about the proposed fact. Because the proposed fact accurately quotes Judge Whipple's order, this proposed fact is undisputed.

29.  On January 13, 2005, KCP&L and Travelers entered into a settlement agreement in which Travelers paid KCP&L $10 million to settle KCP&L's insurance claim under the excess policy.

---

[4]National Union and Reliance had previously made interim payments to KCP&L of approximately $165 million. (see paragraph 20, document number 1, attachment 1, in case number 02-0680-CV-W-DW).

19

30.  In May 2006, the Court of Appeals for the Western District of Missouri remanded the Rockwell case to the trial court with directions to reinstate the jury verdict against Rockwell in the subrogation litigation in the amount of $97,022,191.16, plus interest ("Rockwell judgment"), which previously had been reduced by the trial court to $191,000.00.

31.  On June 14, 2006, Travelers demanded reimbursement from KCP&L under the subrogation clause from the Rockwell judgment.

32.  On September 7, 2006, KCP&L recovered $115,204,305.05 from Rockwell in subrogation proceeds.

        The citations to the record by Travelers do not support this fact.  The judgment indicates judgment was entered in the amount of $97,022,191.16 with $18,038,152.12 in interest, but does not identify that money as subrogation proceeds.  In addition, those two amounts add up to $115,060,343.28.  In addition, the bank statement is not self-explanatory, does not include the name Rockwell, and does not include any amount of $115,204,305.05.  However, National Union does not contest this proposed fact.

33.  Travelers filed its first amended complaint against National Union and KCP&L in the present matter to recover the $10 million it paid to KCP&L.

34.  In the settlement agreement with Travelers, KCP&L agreed not to assert certain affirmative defenses, including any based on statute of limitations or laches, relating to the parties' disagreement over subrogation rights.

> National Union objected to this proposed fact on the ground that the interpretation and application of the terms and conditions of the settlement agreement are questions of law for the court to determine.  Because the proposed fact is not an exact quote from the settlement agreement, Travelers's interpretation of the meaning of that paragraph of the settlement agreement is not undisputed.  In any event, this proposed fact is not material.

**35.  In its answer to Travelers's first amended complaint, KCP&L asserted certain affirmative defenses, including statute of limitations and laches.**

36.  In the settlement agreement, Travelers reserved its right to priority of recovery to any future recoveries obtained through subrogation against various tortfeasors.

> National Union objected to this proposed fact on the ground that the interpretation and application of the terms and conditions of the settlement agreement are questions of law for the court to determine.  This is Travelers's position with regard to this litigation and is not an undisputed fact.

21

**37.   KCP&L, the insured, has not reimbursed Travelers for any of the $10 million that Travelers paid.**

**38.   KCP&L split all subrogation recoveries with National Union on a 55% primary insurers/45% KCP&L basis and has not paid Travelers any portion of the subrogation recoveries.**

**39.   National Union, the primary carrier, has not reimbursed Travelers for any of the $10 million that Travelers paid to KCP&L.**

40.   Travelers requests leave to present evidence of fees and expenses upon the granting of its motion for summary judgment.

This is not a proposed fact, it is a request.

**IV.   *DUTY OF GOOD FAITH AND FAIR DEALING***

National Union argues that it is entitled to summary judgment on Count II of the first amended complaint -- breach of duty of good faith and fair dealing -- because under Missouri law, there is no duty of good faith and fair dealing owed by a primary carrier to an excess carrier.  Travelers argues that the cases cited by National Union are inapplicable because they "stand for the proposition that a primary insurer does not owe an excess insurer a duty to act in the interest of the excess insurer in settlement negotiations on a subrogation claim", and this case does not involve settlement negotiations.  Travelers also argues that National Union agreed to manage the underlying

22

claim in the allocation agreement, and therefore it assumed a duty of good faith.

Travelers's attempts to distinguish the cases cited by National Union are without merit. The Eighth Circuit, in Reliance Insurance Company in Liquidation v. Chitwood, 433 F.3d 660, 664 (8th Cir. 2006), held that "Missouri courts . . . have not recognized a direct duty of good faith between primary and secondary insurers." Even an unpublished opinion cited by defendant, West American Insurance Company v. RLI Insurance Company, 2007 WL 3376878 (W.D. Mo. Nov. 6, 2007), holds that "Missouri does not recognize a duty of good faith owed by an excess insurer to a primary insurer."[5]

Travelers's alternative theory is that "as manager of the subrogation litigation and any recoveries obtained, National Union had a duty to obtain and distribute the proceeds according to Missouri law. The Missouri Supreme Court holds that an *insured* as a duty to hold subrogation proceeds for the insurer to the extent of the insurer's payment." (emphasis added). In support, Travelers cites Keisker v. Farmer, 90 S.W.3d 71, 74 (Mo

---

[5]Although the holding in West American Insurance Company was the reverse (i.e., a *primary* insurance carrier hoping to convince a court that there exists a duty of good faith from the *excess* carrier), Travelers does not argue that the distinction is significant. Rather, Travelers cites this case in support of its attempt to distinguish National Union's cases as holding that there is no duty of good faith only "in settlement negotiations on a subrogation claim."

23

banc 2002).

First, I note that Travelers's argument applies to KCP&L, not to National Union.  KCP&L is the insured, National Union is not.  Second, Travelers's interpretation of <u>Keisker v. Farmer</u> is off the mark.  There is nothing in <u>Keisker v. Farmer</u> that even discusses a duty of a primary insurer (or a "manager" of subrogation litigation") toward an excess insurer.  To the contrary, <u>Keisker</u> states, "Where one litigates to create a fund for others, those sharing must contribute a proportional part of the expenses." <u>Id</u>. at 75.  Travelers has paid nothing toward litigation expenses and therefore even if Travelers were entitled to recover anything from KCP&L or National Union, it would be required to reduce its recovery by its share of the litigation expenses.  Although it is not included as an undisputed fact in any of the summary judgment motions, the documents allege that KCP&L spent $19.3 million collecting damages from the third parties.  It is unknown how much National Union spent in collecting the damages from the third parties.

Based on the above, I find that there is no recognized direct duty of good faith between primary and secondary insurers in Missouri.  Therefore, National Union's motion for summary judgment on Count II of the first amended complaint will be granted.

*V.* ***TERMS OF THE POLICIES***

National Union argues that it is entitled to summary
judgment on Count I of the first amended complaint -- declaratory
judgment -- because (1) National Union is not a party to the
excess policy and Travelers is not a party to the primary policy,
(2) equitable principles do not create a legal duty requiring
National Union to reimburse Travelers, and (3) standard insurance
industry practice does not require National Union to reimburse
Travelers.

*A.* ***PARTY TO THE POLICIES***

National Union argues that it is not bound by any "priority
of recovery" terms in the excess policy because it was not a
party to that policy, and that Travelers cannot enforce any
priority of recovery terms in the primary policy because it was
not a party to that policy.  Travelers, citing a California state
case, argues that it is entitled to reimbursement by National
Union of the $10 million it paid to KCP&L because National Union
is "subrogated to the rights of its insured, KCP&L" and is
therefore bound by the terms of the excess policy.

Only the parties to a contract are bound by its terms.
Prickett v. Lucy Lee Hospital, Inc., 986 S.W.2d 947, 948 (Mo. Ct.
App. 1999); Kansas City Downtown Minority Development Corp. v.
Corrigan Associates, 868 S.W.2d 210, 223 (Mo. Ct. App. 1994).  In
Corrigan Associates, the Downtown Minority Development

25

Corporation ("DMDC") argued that a deed of trust granted it subrogation. The deed of trust provided, "[DMDC] is hereby subrogated to the claims and liens of any claim, mortgage, real estate contract, or other liens discharged, in whole or in part, by the proceeds of the lien hereby secured." In that case, an Urban Development Action Grant ("UDAG") loan was supposed to be used to discharge a Master Mortgage $3.6 million first deed of trust purchased by Wedgestone. After a default, DMDC learned it did not hold the first lien on the property; Wedgestone did. DMDC argued that the above-quoted deed of trust granted it subrogation rights, putting it ahead of Wedgestone in the ranking of priority. The Missouri court disagreed:

> Wedgestone was not a party to the DMDC deed of trust. . . . As a general rule, only parties to a contract are bound by the terms of that contract. Thus the DMDC deed of trust itself will not advance DMDC's cause for subrogation.

Id. at 223-224.

It is undisputed that Travelers was not a party to the primary insurance policy, and National Union was not a party to the excess insurance policy. Therefore, Travelers cannot enforce the terms of either agreement as to National Union.

The cases cited by Travelers are inapplicable to the factual situation in this case. In Century Indem. Co. v. London Underwriters, 12 Cal. App. 4th 1701, 1709-10 (Cal. Ct. App. 1993), there were no uninsured damages. In that case, an employee was electrocuted, and his heirs were paid approximately

26

$1.1 million from two insurance policies, a primary and an

excess. The court identified the issue as follows:

> This case presents the following question. When a primary
> insurer pays $500,000 of its insured's $1.1 million
> settlement of a claim against the insured, and when the
> insured's excess insurer pays the remaining $600,000 of the
> claim, and when the insured recovers indemnification of
> $500,000 from a third party, which of the two insurers is
> entitled to be reimbursed with the $500,000 received from
> the third party?

Id. at 1703.

The issue there, then, dealt with money obtained from a

third party which, when added to the insurance money provided by

the primary carrier and the excess carrier, added up to more than

the damages. In this case, the money paid from the primary

insurance policies and the excess policy, coupled with the

amounts recovered in tort actions, fell short of the amount of

damages.

As the court stated in Century Indem. v. London

Underwriters, once the primary insurance carrier paid the amount

of its policy, it became subrogated to the rights of the insured

who was obligated by contract with the excess carrier to

reimburse the excess carrier before reimbursing the primary

carrier. However, the difference is that the insured had no

uninsured damages, and all of the money obtained from the third

party (the subcontractor's insurance company) was required to go

to one insurance company or another. In addition, a very

important fact is that the excess carrier was involved in the

27

lawsuit that resulted in the collection of the funds at issue. In this case, Travelers did nothing to aid in the collection of money from third parties and instead sought in this lawsuit to collect the $10 million it paid on its $100 million policy from the two entities who brought the lawsuits against the third parties and eventually collected from those parties. The facts of this case do not match the facts of <u>Century Indem. Co. v. London Underwriters</u>.

Also cited by Travelers is <u>Highlands Ins. Co. v. New England Ins. Co.</u>, 811 S.W.2d 276 (Tex. Ct. App. 1991), which is inapplicable because in that case the third level excess insurance policy adopted the policy of the first excess carrier. That did not occur in this case. Additionally, the issue was whether the first excess carrier, who voluntarily paid $13.5 million on a $10 million policy, could be reimbursed before a third-level excess carrier. Because both of the insurance contracts provided for the order of recovery, the court noted, "The provision simply does not contemplate that an insurer might make a voluntary payment beyond its policy limits".

<u>Vesta Ins. Co. v. Amco Production Co.</u>, 986 F.2d 981 (5th Cir. 1993), is not applicable because it specifically applies Texas law, and the issue of uninsured damages again was not present: "One can look at subrogation recovery as reducing the net loss, in which case the excess carriers would not be

obligated to pay the loss." Here, the amount collected from third parties did not reduce the net loss to the insurance companies as it did in Vesta.

In this case, even assuming Travelers was subrogated to the rights of KCP&L, that fact would not help Travelers. In Great Atlantic Insurance Company v. Liberty Mutual Insurance Company, 576 F. Supp. 561 (E.D. Mo. 1983), the court was presented with the question of whether a primary insurance carrier should reimburse an excess carrier for the amount the excess carrier paid for an explosion that occurred in Kennett, Missouri. The court held that the excess carrier was not entitled to reimbursement.

> Great Atlantic argues that it is subrogated to the rights of [the insured] and stands in its shoes by reason of the payment it made. Assuming for present purposes that this is true, it is equally true that the rights of Great Atlantic are no greater than the rights of [the insured] under the [primary] policy.

576 F. Supp. at 564. The court held that even assuming the excess carrier was subrogated to the rights of the insured, the excess carrier had no right to collect additional money from the primary carrier because the insured had no right to collect additional money from the primary carrier. The same is true here. KCP&L has no legal right to collect additional money from National Union; therefore, even were Travelers to stand in KCP&L's shoes, Travelers would have only the rights possessed by

29

KCP&L, which do not include the right to collect an additional $10 million from National Union.

Because Missouri law is clear that only parties to a contract can be bound by those contracts or enforce those contracts, National Union is entitled to summary judgment on Count I.

## B.    *EQUITABLE PRINCIPLES*

Travelers states in its first amended complaint that "equitable principles" entitle it to reimbursement from National Union of the $10 million Travelers paid to KCP&L.

Missouri courts have held that equity cannot create legal rights that do not exist:

> No maxim of equity may be invoked to destroy an existing legal right nor may equity create a right at law which does not exist.  Equity does not create rights but determines what rights the parties have and whether and in what manner it is just and proper to enforce them.  A court of equity may not act merely upon its own conceptions of what may be right in a particular case, but is bound by established rules and precedents.

Hall v Hall,[6] 506 S.W.2d 42, 45 (Mo. Ct. App. 1974) (citations

---

[6]In Hall, there were only two shareholders of a closely-held corporation.  The plaintiff wanted to exercise her preemptive right to purchase additional stock; however, the other stockholder refused to attend any stockholder meetings, and both stockholders were required to attend in order to have a quorum. The plaintiff filed suit, contending that her 50 percent ownership interest in the corporation had been rendered impotent by the refusal of the defendant to attend and participate in stockholders' meetings.  She requested that the defendant be compelled by injunction to attend and vote at a stockholders' meeting.  The court held, "The holder of shares is under no obligation whatever to the corporation other than to make full

30

omitted).

Travelers does not respond to this argument other than to cite to an unpublished one-paragraph-long Ninth Circuit opinion.

Because equity does not create a right at law which does not exist, National Union's motion for summary judgment as to Count I on this basis will be granted.

## C.   INDUSTRY STANDARDS

Travelers states in its first amended complaint that "standard insurance industry practice" entitles it to reimbursement from National Union of the $10 million it paid to KCP&L.  National Union argues that under Missouri law, standard insurance industry practice does not establish a legal duty requiring National Union to reimburse Travelers.

Manzella v. Gilbert-Magill Company, 965 S.W.2d 221 (Mo. Ct. App. 1998), is on point.  In Manzella, the plaintiff decided to open a deli and called his insurance agent to get "some idea of an insurance cost," as that information was required on his loan application.  When the business was set to open, Manzella again

payment of the consideration for which the shares are issued.  As participation by a shareholder in management of corporate affairs is voluntary, it necessarily follows that no shareholder may be compelled to attend or participate in shareholders' meetings. . . .  Conceding that the failure of respondent Harry Hall to attend stockholders' meetings has injured appellant in preventing her from participating in the management of the corporation, if respondent is under no legal duty to participate, how may a court of equity compel him by injunction to attend and vote at a stockholders' meeting?"  Id. at 45.

31

called the agent and told him to give him the coverage he needed,
without specifying what coverage he wanted.  Manzella got a
policy with $50,000 coverage for loss of fixtures, equipment,
inventory, and business interruption.  After the deli caught
fire, Manzella had suffered $151,059.59 in damage.  Because his
insurance coverage was woefully insufficient, he filed a lawsuit
against the insurance agency alleging the agent was negligent in
failing to advise him on the amount of insurance coverage
necessary for his business.

During the trial, Manzella sought to introduce evidence of
the industry custom or standard for adequate amounts of insurance
coverage.  The court held:

> [T]he Manzellas fail to cite any authority for the
> proposition that an insurance agency or its agent have a
> legal duty to customers to abide by underwriting guidelines
> in placing insurance coverage.  They rely on Missouri law
> that "[e]vidence of industry custom or standard is
> admissible proof in a negligence case."  Clearly, industry
> standards are admissible to show that an insurance agency
> breached its duty owed to individual customers.  However, .
> . . in order for industry standards to be admissible, the
> defendant must have a duty to which the standards are
> relevant.

Manzella, 965 S.W.2d at 229 (citations omitted).

Travelers does not respond to this argument other than to
cite to an unpublished one-paragraph-long Ninth Circuit opinion.

Because Travelers has cited no legal authority in support of
its theory that industry standards entitle it to collect $10
million from National Union, industry standards are not relevant

32

in this case.  I note here, however, that neither party submitted
any evidence of industry standards either in support of or in
opposition to this motion for summary judgment.

## V.   *THIRD PARTY BENEFICIARY*

In Count III of the first amended complaint, Travelers
claims that its position as excess insurer makes it a third-party
beneficiary of the contract between National Union and KCP&L and
that National Union had a duty to protect Travelers's interests
as a third-party beneficiary.  National Union argues that it is
entitled to summary judgment on Count III of the first amended
complaint because Travelers cannot show that it was a third-party
beneficiary or that there was a breach of the contract to which
it was a third-party beneficiary, both necessary elements of this
cause of action.

A third party beneficiary is one who is not privy to a
contract or its consideration but who may nonetheless maintain a
cause of action for breach of contract.  <u>General Motors</u>
<u>Acceptance Corp. v. Windsor Group, Inc.</u>, 2 S.W.3d 836, 839 (Mo.
Ct. App. 1999), citing <u>Andes v. Albano</u>, 853 S.W.2d 936, 942 (Mo.
Banc 1993).

> There are three types of third-party beneficiaries to a
> contract: donee beneficiaries, creditor beneficiaries, and
> incidental beneficiaries. "A donee beneficiary is one upon
> whom the promisee intends to confer the benefit of
> performance of the contract although such performance will
> not discharge a preexisting duty or obligation to the
> beneficiary." A creditor beneficiary is "one upon whom the
> promisee intends to confer the benefit of the performance of

33

the contract and thereby discharge an obligation or duty the
promisee owes the beneficiary." An incidental beneficiary
is one "who will be benefitted by performance of a promise
but who is neither a promisee nor an intended beneficiary."
Only donee and creditor beneficiaries have enforceable
rights under a contract.

State ex. rel. E.A. Martin Machinery Co. v. Line One, Inc., 111
S.W.3d 924, 930 (Mo. Ct. App. 2003).

There is no evidence that KCP&L intended to confer the
benefit of the primary insurance policy to Travelers, and indeed
Travelers does not argue such. The insurance policy between
KCP&L and National Union makes clear that the reason KCP&L
entered into this contract with National Union was to protect
KCP&L's property, not to benefit Travelers.

In order for Travelers to be a creditor beneficiary, there
must be evidence that KCP&L owed a duty to Travelers and National
Union agreed to discharge that duty. Travelers has pointed to no
such evidence, and again does not make this argument.

In fact, Travelers does not make any "argument," it merely
states that it is a third-part beneficiary. Merely stating
something does not make it so.

The cases cited by Travelers are inapposite. First,
Travelers quotes from ABT Building Products Corp. v. National
Union Fire Insurance Co. of Pittsburgh, 472 F.3d 99, 147 (4th
Cir. 2006), including a statement that "the excess insurer is a
third party beneficiary of that agreement." However, this
quotation comes from the dissenting opinion in that case, and no

34

part of the majority opinion is relevant to the facts of the case before me.

In <u>Progressive Casualty Insurance Company v. Travelers Insurance Company</u>, 735 F. Supp. 15 (D. Main 1990), the court applied Maine law, which is not applicable here, and held that the primary insurer has a duty to defend any suit "until its limits are exhausted." <u>Id</u>. at 20. Thereafter, the excess carrier must provide a defense to the insured. The case before me does not involve a conflict over which insurance carrier is responsible for paying the attorneys' fees of the insured. <u>Progressive</u> is simply not applicable.

In <u>Utah Power & Light Company v. Federal Insurance Company</u>, 711 F. Supp. 1544 (D. Utah 1989), the court held that:

> [T]he excess carriers had an implied duty to defend that placed them in the position of being required to object to the settlement agreement after they received notice of it and before it was entered. Where they do not assert or show any evidence that the settlement agreement is unconscionable or a product of bad faith, their failure to make timely objection or reserve the right to object constitutes a waiver of that right.

<u>Id</u>. at 1556. This holding, indeed the facts of the case in general, have nothing to do with the issues in the case before me.

<u>Atkinson v. Atkinson</u>, 254 Ga. 70 (1985), involved a wrongful death suit brought by the mother of the decedent. The insurance company settled with the mother and thereafter stopped its defense of the case. The court held that the insurer was

35

required to continue the defense as the father's interest had not been resolved. "An insurer's duty to defend its insured is not satisfied when the insurer settles by paying its policy limits to the wrong party." Id. at 76. Again, the facts and legal conclusions of this case have nothing to do with the issues before me.

As discussed above, Highlands Insurance Company v. New England Insurance Company, 811 S.W.2d 276 (Tex. Ct. App. 1991), also cited by defendant, involved a first-level excess carrier who paid $3.5 million more than its coverage limit, and then tried to get that money back from a suit against third party insurance companies for failure to defend. The court held that the third-level excess carrier was entitled to recover because (1) the first-level excess insurance policy included endorsements that adopted the third-level policy and they both included the same subrogation provisions, and (2) the recovery provision in the insurance contracts "simply does not contemplate that an insurer might make a voluntary payment beyond its policy limits". In the case before me, National Union is not attempting to collect from Travelers money it contends it paid to KCP&L by mistake. The Highlands case is not applicable.

None of these cases have anything to do with the issues in the case before me. It appears that Travelers simply cited to cases that quote the language of 7C J. Appleman, Insurance Law

36

and Practice § 4682, i.e., the excess insurer is a third party beneficiary of the primary insurance agreement. However, each of the cases citing to § 4682 deals with the primary insurer's duty to provide a defense to the insured and to what extent the excess carrier will have to share in those expenses under certain circumstances. Travelers is not suing National Union for recovery of litigation expenses; therefore, I fail to see how any of the cited cases are relevant.

In addition to finding that Travelers is not a third-party beneficiary of the contract between National Union and Travelers, I find that Travelers has not even alleged that there was a breach of that contract. Being a third-party beneficiary in this case would mean only that Travelers can sue National Union for a breach of the contract. Because Travelers does not allege in its first amended complaint that National Union breached the contract, Travelers has no right to obtain the relief it requests in the name of being a third-party beneficiary.

## VI. CONCLUSION

Based on all of the above, I find that there is no genuine issue as to any material fact and that National Union is entitled to judgment as a matter of law on Counts I, II, and III. Therefore, it is

ORDERED that National Union's motion for summary judgment is granted. It is further

37

ORDERED that Travelers's motion for summary judgment (document number 145) and Travelers's motion for leave to file a supplemental statement of uncontroverted facts (document number 196) are denied as moot.


                                    /s/ Robert E. Larsen
                                    ROBERT E. LARSEN
                                    United States Magistrate Judge

Kansas City, Missouri
February 6, 2009

Case 4:06-cv-00946-REL   Document 205   Filed 02/06/09   Page 38 of 38